UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ARMANDO ALULEMA CUTIOPALA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:25-cv-00211-MAL |
| ) | |
| KRISTI NOEM, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORADUM AND ORDER

The Court has reviewed and considered Petitioner Armando Alulema Cutiopala's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2224. Cutiopala is not entitled to relief. The Petition is denied.

### FACTS AND BACKGROUND

Cutiopala is a citizen of Ecuador who entered the United States without a visa and without inspection. Doc. 1 at 4. He was detained upon initial entry and released into the United States. *Id.* Cutiopala has filed a currently pending application for asylum. *Id.* In November 2025, Cutiopala was ordered to appear at the Local ICE office. *Id.* When he reported to the office, he was detained pending completion of his immigration proceedings. *Id.* at 4–5.

### PROCEDURAL HISTORY

On December 6, 2025, Cutiopala filed a petition for habeas corpus. Cutiopala alleges that:

Count I: His detention violates the Immigrant and Nationality Act because he is subject to discretionary detention under 8 U.S.C. § 1226(a) rather than mandatory detention under 8 U.S.C. § 1225(b). Doc. 1 at 16.

Count II: His detention violates his rights under the Fifth Amendment of the United States Constitution. Doc. 1 at 16–17.

The court subsequently issued a show cause order. Doc. 5. The issue is fully briefed, and there are no disputes of material fact.

### LEGAL STANDARD

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). A writ of habeas may be extended to a prisoner who "is in

1

custody under or by color of the authority of the United States ...." 28 U.S.C. § 2241(c)(1). A petitioner is entitled to a writ of habeas corpus, or an order for the respondent to show cause why a writ should not be granted, "unless it appears from the application that the applicant … is not entitled thereto." 28 U.S.C. § 2243. "It is the right and duty of a federal court to make a preliminary examination to determine whether a petition for a writ of habeas corpus discloses upon its face sufficient basis for the issuance of the writ, and to dismiss the petition if it does not." *Banks v. O'Grady*, 113 F.2d 926 (8th Cir. 1940).

## DISCUSSION

### I.  **Cutiopala is not required to exhaust administrative remedies.**

As a threshold matter, the court considers whether Cutiopala must exhaust his administrative remedies before seeking relief from the court. He does not. When a statute does not explicitly require the exhaustion of administrative remedies, the application of the doctrine rests within the "sound discretion of the district court." *State of Mo. v. Bowen,* 813 F.2d 864, 871 (8th Cir. 1987). Courts generally do not require exhaustion when the primary question is a legal one (as opposed to a factual question that could benefit from an agency's expertise). *Id*. As a district court in the Western District of Kentucky noted in a functionally identical case, "[t]he central question at issue here is whether Section 1225 or Section 1226 applies … This is a purely legal question of statutory interpretation and does not require a record." *Singh v. Lewis*, No. 4:25-cv-96-RGJ 2025 WL 2699219, *2 (W.D. Ky. Sept. 22, 2025).

### II.  **Cutiopala is properly detained under §1225(b)(2).**

Cutiopala contends that 8 U.S.C. § 1225(b)(2), which mandates detention, does not apply to him because he was apprehended after a lengthy, 19-year period in the interior of the United States rather than when he arrived at the border. Instead, Cutiopala contends that 8 U.S.C. § 1226 applies, as it applies by default to all aliens in removal proceedings. *See Jennings v. Rodriguez,* 583 U.S. 281, 303 (2018). If he is correct, he is potentially eligible for release on bond. 8 U.S.C. § 1226(a)(2)(A).

Contrary to Cutiopala's claims, there is no binding precedent on this issue. While *Jennings* contains language suggesting that § 1226(a) applies to "certain aliens already in the country" and § 1225(b) applies to "certain aliens seeking admission into the country," nothing about this language suggests that § 1226(a) applies to *all* aliens already in the country or that § 1225(b)

2

cannot apply to aliens already in the country when those aliens are also seeking admission. 583 U.S. at 289. The question in this case simply did not arise in *Jennings*; the *Jennings* court assumed that § 1226 applied because that is the statute under which the government detained the respondent. *Id*. at 289–90. The other statutes *Jennings* references (§§ 1225(b), 1226(c), and 1231(a)) relate to other class-action plaintiffs. *Id*. at 290–91. The issues in *Jennings* include whether three of the four statutes (including §§ 1225(b) and 1226(c)) authorize "prolonged" detention in the absence of an individualized bond hearing and whether, absent a bond hearing, this prolonged detention violates the Due Process Clause of the Fifth Amendment. *Id*. at 296. There was no dispute about which statute applied to which class of alien. *See generally id*. In the absence of controlling precedent, the Court starts from first principles.

"When interpreting a statute, we start with its plain language." *United States v. Grimes*, 702 F.3d 460, 466 (8th Cir. 2012). The text of § 1225(b) reads:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2) (emphasis added). Cutiopala does not claim that he is not "clearly and beyond a doubt entitled to be admitted." Instead, he contends that because he entered the United States without inspection and is already here, he is neither an "applicant for admission" nor seeking admission into the United States. Doc. 11 at 1–3. This is false; Cutiopala is both an "applicant for admission" and "seeking admission" such that his case falls under 8 U.S.C. § 1225(b).

**A. Cutiopala is an "applicant for admission."**

A plain reading of the text unambiguously indicates that Cutiopala is an "applicant for admission." The statute states that an alien is an "applicant for admission" if he meets certain criteria:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). An alien is "admitted" upon "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Because Cutiopala is living in the United States without entering lawfully, he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1); *see* 8 U.S.C.

3

§ 1101(a)(13)(A); *see also Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, *3 (E.D.Mo. 2025).  As the text is unambiguous, this ends the Court's inquiry.

### B.  Cutiopala also is "seeking admission."

Cutiopala also is "seeking admission" to the United States because he is an "applicant for admission."  "When endeavoring to ascertain the ordinary meaning of a word, this court often relies on a dictionary." *United States v. Hackman*, 630 F.3d 1078, 1083 (8th Cir. 2011).  According to the Oxford English Dictionary, "[t]o 'seek' is '[t]o ask for' or 'request.'" *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 149 (2023) (quoting 14 Oxford English Dictionary at 877).  An "applicant" is a "person who makes a request." *Oxford English Dictionary* (on-line ed.).[1]  To "apply" is to "make a (formal) request for." *Oxford English Dictionary* (on-line ed.).[2]  So by applying for admission, Cutiopala is necessarily seeking admission.  Other portions of the same statutory section reinforce this understanding.  For instance, in 8 U.S.C. § 1225(a)(5), the statute provides that "[a]n applicant for admission may be required to state under oath [] information … regarding the purposes and intentions of the applicant in *seeking admission* to the United States…."  This subparagraph takes for granted the fact that applicants for admission are seeking admission.

Cutiopala claims that the Court should not read "applicant for admission" as synonymous with "alien seeking admission" because this makes 8 U.S.C. § 1225(b)(2)(A) superfluous and violates the meaningful-variation canon.  Doc. 1 at 14; Doc. 11 at 6.  This argument fails.  First, there is no surplusage (superfluity) here.  Surplusage refers to nonessential language in a statute— essentially that the statute would mean the very same thing if that language were omitted. *See, e.g.*, *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 56 (2025) (referring to the argument that certain words "perform[ed] no real work").  Here, the "seeking admission" language is not superfluous because those words are performing some work to make sure that the reader knows that the second use of "alien" in 8 U.S.C. § 1225(b)(2) refers to the same alien in the same statutory subsection (before the reference to the "examining immigration officer").

Second, to the extent that the government's definition of "seeking admission" makes 8 U.S.C. § 1225(b)(2) surplusage, it does not change the outcome.  Courts read statutes as superfluous where, as here, the reading with surplusage remains the best reading of the statute. *See Stanley*, 606 U.S. at 56 ("[T]he canon against surplusage is not an absolute rule…[a]nd it

---

[1] Last updated December 2025.  A stable link can be accessed at https://perma.cc/SE33-9WHQ.
[2] Last updated December 2025.  A stable link can be accessed at https://perma.cc/LHL9-PZG3.

certainly does not require us to favor an unusual meaning that will avoid surplusage over a natural one.") (quotation marks and internal citations omitted).  As noted above, Cutiopala is "seeking admission" under the plain, unambiguous meaning of the phrase.

The same goes for the meaningful-variation canon.  That canon states that "[w]here a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022).  Even if "applicant for admission" and "alien seeking admission" are "materially different term[s],"[3] the meaningful-variation canon does not trump the plain meaning of the text, which is clear in this case.  *See supra*-Part II.B; *see also Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253 (1992) ("In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last. . .") (citation omitted); William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 111 (2016) (reasoning that "meaningful variation of terminology within a statute ought not be as powerful a consideration as ordinary meaning" and concluding that "the Legislature is not required to be overly repetitive in its choice of language"); *Olalde v. Noem*, 2025 WL 3131942 at *3.  Finally, even if the meaningful variation canon applied and was unrebuttable, Cutiopala does not explain why "alien seeking admission" is not simply a broader term that encompasses "applicant for admission."[4]  The meaningful-variation canon does not change the outcome here.

---

[3] This is debatable.  *See* William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 111 (2016) ("[T]he Legislature is not required to be overly repetitive in its choice of language[.]"); *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("The [meaningful-variation canon] is mostly applied to terms with some heft and distinctiveness, whose use drafters are likely to keep track of and standardize.").

[4] The statute's text supports this reading.  For example, the statute refers to "aliens…who are applicants for admission or otherwise seeking admission…." § 1225(a)(3).  The use of "otherwise" suggests that applicants for admission necessarily seek admission but other aliens may seek admission without being applicants for admission.

5

### C. The full statute does not contradict this reading.

Cutiopala also unsuccessfully argues that the context of the statutory scheme indicates that § 1225(b) is only applicable to newly arriving aliens. First, he argues that the title of the section indicates that it refers only to arriving aliens. Doc. 1 at 14. Second, he argues that because other parts of the 8 U.S.C. § 1225 refer to arriving aliens, 8 U.S.C. § 1225(b)(2) must also refer exclusively to arriving aliens. Doc. 1 at 14. Third, he argues that the government's reading renders part of another statute—8 U.S.C. § 1226—redundant. Doc. 1 at 14–15.

The title of 8 U.S.C. § 1225 does not cause the section to refer solely to aliens newly arriving in the country. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing[.]" Cutiopala argues that the phrase "arriving aliens" indicates that the section is concerned solely with newly arriving aliens. Doc. 1 at 14. While it is true that "[t]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute," *Porter v. Nussle*, 534 U.S. 516, 527–28 (2002) (citation omitted), there is no doubt to resolve here because the statute has a plain meaning. *See supra* Part II.B. Even if the Court considered the title, the semicolons indicate that the title includes at least three separate items. *Olalde*, 2025 WL 3131942 at *3. Further, § 1225(c)(1)—not § 1225(b)(2)—addresses expedited removal of inadmissible aliens. 8 U.S.C. § 1225(c)(1). In fact, § 1225(c)(1)'s use of the phrase "arriving alien[s]" in comparison to § 1225(b)(2)'s use of the different phrase "alien who is an applicant for admission" suggests that (b)(2) does *not* address only newly arriving aliens. *Jennings,* 583 U.S. at 300 ("The expression of one thing implies the exclusion of others."). Further, there is no rule of statutory construction stating that section titles in statutes must be exhaustive. The title does not alter the analysis.

Nor do other parts of § 1225 indicate that § 1225(b) refers to newly arriving aliens only. Cutiopala cites § 1225(b)'s subheading—"Inspection of Other Aliens" and notes references to "stowaways" and "crewmembers" in (b)(2)(B). Doc. 1 at 14. But none of these references change the plain meaning of the text. Nor do they imply that the entire statute refers solely to arriving aliens. Even if the *primary* purpose of the statute were to govern arriving aliens, it is not incongruent for a section primarily concerned with creating procedures for arriving aliens to also address aliens who violated the law and have been in the United States for years.

Finally, we turn to the interaction between the government's reading of § 1225(b) and three provisions in § 1226 that similarly mandate detention: 8 U.S.C. § 1226(c)(1)(A), (D), and (E).

6

These three provisions require the Attorney General to detain any alien who is inadmissible or deportable for certain reasons and any alien who is arrested for, convicted of, or admits to committing certain crimes. *Id.* Cutiopala claims that the government's reading of § 1225(b) makes these § 1226 mandatory-detention provisions surplusage because aliens present in the United States without admission are subject to 8 U.S.C. § 1225. Doc. 1 at 14–15. This argument fails.

Even if subsections 1226(c)(1)(A), (D), and (E) are surplusage, Cutiopala's read of § 1225(b)(2) would fail because it is not a better reading in context. Surplusage is not fatal if the "belt-and-suspenders approach" remains the only reasonable reading of the text. *Brazil v. Auto-Owners Ins. Co.*, 3 F.4th 1040, 1043–44 (8th Cir. 2021). Nor is it fatal when "context" indicates that the drafter is using the "belt-and-suspenders approach." *Am. Family Mut. Ins. Co., S.I. v. Mid-Am. Grain Distributors, LLC*, 958 F.3d 748, 757 (8th Cir. 2020). Here, the surplusage argument would be much more convincing if §§ 1225(b) and 1226(c)(1)(A), (D), and (E) were passed at the same time. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999) (suggesting that canons of construction can be "pretty weak when applied to acts of Congress enacted at widely separated times"). As it were, subsections 1226(c)(1)(A), (D), and (E) were passed later, after nearly 30 years of administrations (and now courts) applying § 1225(b) wrong. Doc. 1 at 8; Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Rocha Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB) 2025 WL 2337099, at *9 (D. Arizona August 11, 2025) (continuing to read it incorrectly in 2025). It is not shocking that Congress would therefore pass super clear requirements that particular aliens (including those already in the country) who have engaged in crime or who have terrorist ties be automatically detained. 8 U.S.C. § 1226(c)(1)(A), (D), (E). Further, as discussed above in Part II.B, the government's interpretation of the statute is the better and only reasonable read despite any alleged surplusage.

### D. The historic agency interpretation is not binding.

Cutiopala argues that § 1225(b) should apply only to aliens present in the United States because of 26 years of agency policy. Doc. 1 at 8. Historically, agency policy, as articulated by the Executive Office for Immigration Review, applied § 1226 to aliens who entered the country

7

without inspection. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. at 10323. The Executive Office for Immigration Review changed its position and now maintains that § 1225 applies to such aliens. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228–29 (BIA 2025). Though agency interpretations (especially those close in time to the passage of a statute) may be useful guides, they are not binding. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). And while historic practice is useful evidence, it does not justify ignoring the plain meaning of the text. *Id*. at 412–13; *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). The historic interpretation does not control here because it is contrary to the plain text. *See supra* Part II.B.

### III. Cutiopala's detention does not violate his fifth amendment rights.

The due process claim Cutiopala raises relies on § 1225 being inapplicable to his situation. Doc. 1 at 16–18. Because he is properly detained under § 1225, this claim fails.

### IV. Cutiopala is not entitled to a hearing under the Due Process Clause.

Nor does due process require a bond hearing. The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). While significant constitutional concerns may exist for mandatory immigration detentions exceeding six months, Cutiopala has not been detained for over six months. Doc. 1 at 4; *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (interpreting immigration statute to require hearing after six months to avoid constitutional issues and holding up to six months' detention "presumptively reasonable"); *Jennings*, 583 U.S. at 299; *Rodriguez v. Robbins,* 715 F.3d 1127, 1144 (9th Cir. 2013) (mandatory detention under § 1225(b) is constitutional but requires bond hearing after six months); *Jennings*, 583 U.S. at 353, 356 (Breyer, J. dissenting) ("[W]here confinement of [] noncitizens [detained under 1225(b)(1)(A)(i)] is prolonged (presumptively longer than six months), bail proceedings are constitutionally required.").

### CONCLUSION

For the aforementioned reasons, the Petition for Writ of Habeas Corpus, Doc. 1, is **DENIED** and **Dismissed**.

Dated this 15th day of January, 2026.

*Maria A. Lanahan*
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE